ESTHER E. LESLIE, by next friend, *vs.* CITY OF LEWISTON.

*Way. Traveller—who is within meaning of R. S., c.* 18, §§ 40, 65. *Negligence.*

A ditch was dug along by the side of a house, and extended out into the street as located. There was no way to go from the house to the privy used therewith, without either crossing the ditch or passing around that end of it which was in the street. The plaintiff, a minor, living in the house as a member of her father's family, having occasion to visit the water-closet in the evening, attempted, while upon her return to the house, and having no other purpose than to reach it in the safest way, to go round the end of the ditch. After crossing the line of the street, but before reaching the wrought portion of it, or the end of the ditch, (the night being very dark) she turned, stumbled, fell into the ditch, and was injured; *held*, that she was not in the use of the street as a traveller within the meaning of the statute providing for the making and repair of highways.

The ditch was dug by the father's landlord for the purpose of drainage, and was suffered to remain open for several weeks before the accident; *held*, that there was such negligence in the father in permitting the drain to remain so long in this dangerous condition, and that his minor child was so affected by his negligence, as to preclude a recovery by her in this case, even if she were otherwise entitled to recover.

ON EXCEPTIONS.

TRESPASS on the case for an injury received on the night of December 10, 1871, through a defect in Horton street, Lewiston, a way which the city was bound to keep in repair. The plaintiff and her twin sister, then twelve years of age, had been passing the afternoon with a sick friend, and returned home to their father's house on said street, at about seven o'clock, it being a very dark evening, and went into the front entry. Immediately after going into the house the plaintiff requested her sister to go with her to the water-closet, which was about twenty feet in the rear of the south-westerly corner of the house. They went out of the same door they had just entered, passed along the street into their yard and to the water-closet. While upon their return the plaintiff stubbed her toe and fell into a drain, severely injuring her back

and spinal column. From the water-closet the drain extended close beside the south side of the house to the ditch of the wrought road on the westerly side of Horton street, and was two feet wide and eighteen inches deep. It had been dug a month before the injury, to drain the sink spout and privy. It had no crossings and had been left open its whole length, the same as when dug. The plaintiff's father occupied the upper, and another person the lower part of the house, as tenants of one McGillicuddy. There was some disagreement as to whether or not Mr. Leslie had requested to have the drain dug. He said he asked his landlord to cover it up some time before the accident, as it was dangerous, but the latter replied that he could get nobody to do it. McGillicuddy denied any recollection of this conversation.

The drain was between the house and the privy, so the Leslies had no means of reaching the water-closet, if they kept upon their own premises, except by crossing the drain. The family generally went out of the front door, the only one they had the right to use, and stepped across the drain by the corner of the house; but the children had frequently gone out into the street, round the end of the drain, and down the other side of it to the privy. On the night of the injury they went in this way, and on returning, plaintiff thought she had reached the end of the drain, and therefore turned to go toward the house, when she stubbed her toe, fell into the drain, within the limits of the street, and received the injuries mentioned. The point where she turned to pass the drain, and where she fell and was hurt, was about five feet from the end of the drain next the street, and about the same distance from the ditch on the westerly side of Horton street, within the limits of the street, but not of the portion wrought by travellers, and about sixteen feet from the front of the house. There was no sidewalk upon that side of the street, though a space ten feet wide had been left for one, there being no travel on that side of the street, except by those entering the house mentioned, and the one adjoining it, which were the only houses on that side of this street.

The defendants requested instructions to the jury that the plain-

tiff, at the time of receiving the injury, was not a traveller within the meaning of our statutes, and that she could not recover because the accident was occasioned by her father's neglect to keep the premises occupied by himself and family in a safe condition. The judge declined to give either instruction, and the defendants excepted. The verdict was for the plaintiff, assessing damages at $3500.

*Record & Hutchinson* and *E. F. Pillsbury*, for the plaintiff.

*M. T. Ludden*, for the defendants.

DANFORTH, J. In this case the defendants requested the court to instruct the jury, "that to entitle the plaintiff to recover she must at the time of the injury have been a traveller upon the street or highway, and must have been using the street as a thoroughfare; and if she was returning from the water-closet to the house in the manner shown by her testimony, and was at the time of the injury only about six feet within the located limits of the street, and outside the travelled and wrought portions, and had not entered upon the travelled or wrought part of the street, nor upon any part connected with the travelled and wrought portion, she was not a traveller within the meaning of the law." This was not given.

From the undisputed facts developed by the plaintiff's testimony, we think the requested instruction appropriate, and should, at least in substance, have been given.

The statute requires cities and towns to keep their "ways safe and convenient" for travellers only; and when this is done they have no further duties or responsibilities in relation to them. Hence, when the statute further provides that "any person" who suffers damage through any defect in a way, shall have a remedy, it necessarily refers to that class of persons who were, not only in the lawful use of it, but for whose use and whose safety and convenience it was established. This was settled in *Stinson v. Gardiner*, 42 Maine, 248.

No question is raised as to the safety and convenience of the

Leslie *v.* Lewiston.

wrought part of the street, or of its sufficiency to amply accommodate all the travel having occasion to pass over it. The defect complained of, though within the located limits, was outside of the travelled part of the street. The plaintiff, at the time of the accident, had passed from the house she was then occupying, as a member of her father's family, to the water-closet, and was on her return to the house. The house stood upon the street, about ten feet from its westerly line, and the water-closet still farther from the street, and in the rear of the south-westerly corner of the house. The defect which caused the injury was a ditch dug along the south side of the house and into the street for the purpose of draining the sink spout and water-closet belonging to the house. It appears that the only occasion the plaintiff had for passing into the street was to go round the drain instead of crossing it. She had not reached, and had no purpose of reaching, the travelled part of the street. She was not using it as a highway, and had no intention of so doing. It was not as a part of the street, even, but as a curtilage of the house. She had appropriated it as a convenience for domestic purposes, as an appurtenant. to the house in which she was residing. She was not, therefore, a traveller, in any such sense as is contemplated by the statute providing for the recovery of damages arising from defects in streets or highways.

The courts of Massachusetts have gone even farther than this. It is there held, as well settled law, that a person travelling upon the highway and voluntarily turning therefrom to enter upon his own premises, or private way, ceases to be under the protection of the law as soon as he leaves the travelled or wrought part of the way, though an injury happens from a defect within its located limits. *Kellogg v. Northampton*, 4 Gray, 65, and cases cited.

In this State the same doctrine is recognized in *Dickey v. Maine Telegraph Company*, 46 Maine, 483 ; and we have been referred to no case where any person having voluntarily turned from the travelled path, or not having reached the wrought part and suffering damages by a defect within the located limits of the road, has been allowed to recover of the town. It is true that it has often

been held incumbent upon towns to keep the whole width of their ways free from artificial obstructions and defects, but this duty has been imposed only for the protection of such persons as are in the use of the wrought part as travellers.

If the house had stood upon the line of the street, and the steps for the purpose of passing in and out had projected into the street, it would hardly be contended that any member of the family, receiving an injury from a defect in such steps while entering into or going out of the house, would be entitled to recover of the city as a traveller upon the highway. A person occupying land adjoining the highway, for the purpose of ploughing up to the line, might find it convenient to drive his team into the road. In such a case it would hardly be claimed that the town would be under any legal obligation to keep the road "safe and convenient," or even free from such obstruction as did not naturally exist. These supposed cases do not differ in principle from the one at bar. In each the highway is not used as such, or in any proper sense for the purpose of travelling, but rather as an appurtenant to, or part of, their own private premises.

There is another view of this case which is equally fatal to its maintenance. The plaintiff, at the time of the accident was a minor, a member of her father's family, and under his care and control. Such a relation made it incumbent upon him to provide her with all safe and convenient means required to enable her to supply such wants and necessities of life, as her state and condition demanded.

The way to and from the water-closet, in the use of which the accident occurred, with its defects and inconveniences, was provided by him as an appurtenant of his dwelling. The defect in this way, which was the alleged cause of the injury, though not of his creation, was continued by his neglect. It is not material that at the moment of the accident she was not under his immediate care and control, or that at the time she was herself in the exercise of ordinary care. It is enough that he required her to use this unsafe way from a neglect to provide any other, and that she was in the

use of that which had been provided by him, to whom alone she could look for such a provision for her wants. Even if the city were responsible to other parties, it would not, under these circumstances, be liable to the father, and his fault is so far attributable to her that if it would bar his right to recover, it would have the same effect upon hers. *Holly v. Boston Gas Light Co.*, 8 Gray, 123. *Exceptions sustained.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS, and VIRGIN, JJ., concurred.